**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **JUSTINO OLEA,**<br>**Plaintiff,**<br>**v.**<br>**JO ANNE B. BARNHART, Commissioner of the Social Security Administration,**<br>**Defendant.** | **NO. EDCV 04-01564-MAN**<br>**MEMORANDUM OPINION AND ORDER** |

Plaintiff filed a Complaint on December 27, 2004, seeking review of the denial by the Social Security Commissioner ("Commissioner") of Plaintiff's claims for Supplemental Security Income benefits ("SSI") and Disability Insurance Benefits ("DIB"). On January 24, 2005, the parties filed a "Consent to Proceed Before a United States Magistrate Judge," pursuant to 28 U.S.C. § 636. The parties filed a Joint Stipulation ("JS") on November 29, 2005, in which: Plaintiff seeks an order reversing the Commissioner's decision denying benefits and remanding the case for further appropriate proceedings, and Defendant requests that the Commissioner's decision be affirmed. The Court has taken the parties' JS under submission without oral argument.

**SUMMARY OF ADMINISTRATIVE PROCEEDINGS**

Plaintiff filed his applications for SSI and DIB on September 25, 2001. (Administrative Record ("A.R.") 74-76, 262-64.) Plaintiff claims to have been disabled since May 1, 1996, due to depression, back pain, and vision problems. (A.R. 24, 74, 102, 262.) He has past relevant work experience as a newspaper mail clerk. (A.R. 12, 111-12, 132, 155, 161-62.)

The Commissioner denied Plaintiff's claims initially and upon reconsideration. (A.R. 30-33, 36-40, 265-68, 269-73.) On June 11, 2002, Plaintiff, who was represented by counsel, appeared at a hearing before Administrative Law Judge Mason D. Harrell, Jr. ("ALJ"). (A.R. 274-89.) On June 25, 2003, the ALJ denied Plaintiff's claims. (A.R. 20-29.) On September 5, 2003, the Appeals Council granted Plaintiff's request for review and subsequently remanded the case to the ALJ for further proceedings. (A.R. 56-58.) In so doing, the Appeals Council reasoned that the ALJ failed to develop the record sufficiently and to address third party statements in discrediting Plaintiff's subjective allegations. (A.R. 57-58.) Thereafter, Plaintiff, who was represented by counsel, appeared in a supplemental hearing before the ALJ on January 15, 2004. (A.R. 290-314.) On March 5, 2004, the ALJ denied Plaintiff's request for benefits. (A.R. 9-15.) On October 28, 2004, the Appeals Council denied Plaintiff's request for review of the ALJ's decision. (A.R. 4-6.)

**SUMMARY OF ADMINISTRATIVE DECISION**[1]

In his March 5, 2004 written decision, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date.[2] (A.R. 14.) The ALJ determined that Plaintiff had "severe" impairments, taken singularly or in combination, of hepatitis C, a depressive disorder, and a personality disorder, but that his impairments did not meet or equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. (A.R. 12, 15.)

The ALJ further found that Plaintiff's complaints of disabling pain generally were not credible. (A.R. 14-15.) He determined that Plaintiff had the physical residual functional capacity to perform "at least light work," but was mentally "limited to simple repetitive tasks in a habituated setting with no demands of academic skills." (A.R. 12.) The ALJ concluded that Plaintiff has a ninth grade education through special education classes, was a "younger individual," and has past relevant work experience as a newspaper mail clerk.[3] (A.R. 12, 15, 108, 111-12, 132, 155, 161-62.) Based on his residual functional capacity finding, the ALJ determined that Plaintiff could not perform his past relevant work. (A.R. 14.) The ALJ found, using Rule 202.18 of the

---

[1] The ALJ noted that "all evidence adduced at the prior hearing, legal arguments advanced, testimony received and documents admitted into evidence, [were] incorporated into the instant decision by way of reference herein." (A.R. 12.)

[2] The ALJ determined that Plaintiff had met the special insured requirements of Title II of the Social Security Act through March 31, 2002. (A.R. 14.)

[3] Plaintiff was born on November 10, 1959, and was 44 years old at the time of the hearing. (A.R. 12, 74, 262.)

Medical-Vocational Guidelines (the "Grids") as a framework and relying on the testimony of a vocational expert, that Plaintiff could perform other work as a small products assembler or motel housekeeper.[4] (A.R. 14-15.) Accordingly, the ALJ concluded that Plaintiff was not "disabled" within the meaning of the Social Security Act. (A.R. 15.)

**STANDARD OF REVIEW**

This Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence. Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996). The Commissioner's decision must stand if it is supported by substantial evidence and applies the appropriate legal standards. Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). Substantial evidence is "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995).

Although this Court cannot substitute its discretion for that of the Commissioner, this Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Secretary of Health & Human Servs., 846 F.2d 573, 576 (9th Cir. 1988); *see also*

[4] The vocational expert, Alan Ey, testified that a hypothetical individual with Plaintiff's age, education, vocational background, and residual functional capacity could not perform Plaintiff's past relevant work. (A.R. 312.) However, Mr. Ey opined that Plaintiff could perform other work as a small products assembler and motel housekeeper. (A.R. 14, 312-13.)

Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). This Court must uphold the Commissioner's decision if it is supported by substantial evidence and free from legal error, even when the record reasonably supports more than one rational interpretation of the evidence. *Id.* at 1039-40; *see also* Morgan v. Commissioner of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999); Flaten v. Secretary of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995).

## DISCUSSION

Plaintiff alleges two general issues: (1) Plaintiff contends that the ALJ failed to account properly for the presence of a personality disorder in assessing Plaintiff's ability to perform work activity; and (2) Plaintiff argues that the ALJ failed to account properly for the presence of a visual impairment in assessing Plaintiff's ability to perform work activity. (JS at 3, 5, 8-9.)

### A. The Record Was Fully And Fairly Developed With Respect To The ALJ's Mental Residual Functional Capacity Finding.

The ALJ in a social security case has an independent duty to fully and fairly develop the record and to assure that the claimant's interests are considered, even when the claimant is represented, as in this case. Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001)

(citing Smolen, 80 F.3d at 1288); Crane v. Shalala, 76 F.3d 251, 255 (9th Cir. 1996)(citing Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983)). However, "[a]n ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001)(citing Tonapetyan, 242 F.3d at 1150).

On October 17, 2002, Dr. Reynaldo Abejuela, a psychiatric consultative examiner, conducted a mental status examination. (A.R. 219-24.) Dr. Abejuela diagnosed Plaintiff with mild depressive disorder, not otherwise specified, and polysubstance dependence, by history. (A.R. 222.) In addition, Dr. Abejuela's examination report also stated "[r]ule out [a]nti-[s]ocial [p]ersonality [d]isorder" and "[d]eferred to psychologist." (A.R. 222-23.)

Dr. Abejuela opined that Plaintiff's level of depression and anxiety was in the "mild range."[5] (A.R. 223.) He found that Plaintiff's emotional impairments did not cause any severe limitations. (A.R. 224.) Specifically, Dr. Abejuela opined that: Plaintiff did not have severe difficulties in social functioning; his concentration, persistence, and pace were not severely impaired; he did not have repeated emotional deterioration in work-like situations; his ability to understand, carry out, and remember instructions was not severely impaired; his response to coworkers, supervisors, and the public was not severely impaired; his

---

[5] Dr. Abejuela noted that Plaintiff's medication (*i.e.*, Zoloft) may be controlling Plaintiff's symptoms. (A.R. 223.)

ability to respond appropriately to work situations was not severely impaired; and his ability to deal with changes in a routine work setting was not severely impaired. (*Id.*) Dr. Abejuela concluded that Plaintiff could follow simple and complex job instructions with continuous abstinence from drugs and alcohol. (*Id.*) Plaintiff's prognosis was deemed to be fair. (*Id.*)

Plaintiff contends that, because Dr. Abejuela's report also stated, "[r]ule out [a]nti-[s]ocial [p]ersonality [d]isorder" and "[d]eferred to psychologist," further examination should have been requested by the ALJ to determine whether Plaintiff suffered from an anti-social personality disorder. (JS at 5.) However, Plaintiff's argument is unavailing as the record is neither ambiguous nor inadequate. *See* Mayes, 276 F.3d at 459-60.

Dr. Abejuela has neither ruled in nor ruled out a diagnosis of anti-social personality disorder. (A.R. 222-23.) His opinion, therefore, only refers to mere possibility and does not conclusively diagnose a particular condition. *See* Simpson v. Commissioner, 2001 WL 213762 *8 (D. Or. Feb. 8, 2001)(rejecting the claimant's argument that a "rule out" diagnosis is tantamount to a "provisional" diagnosis and thereby creates a "strong presumption" that the disorder exists, and explaining further that "'Rule Out' simply means that a particular diagnosis is neither ruled in nor ruled out by the examining physician"). Moreover, Dr. Abejuela expressed, in the remainder of his report, that Plaintiff's occupational and social functioning were not severely impaired. (A.R. 223-24.) In particular, he opined that

Plaintiff's response to coworkers, supervisors, and the public was not severely impaired. (A.R. 224.)

In addition, Dr. Linda Smith, a psychiatric consultative examiner, evaluated Plaintiff and did not diagnose an anti-social personality disorder.[6] (A.R. 167.) She opined that Plaintiff was only mildly impaired in his ability to interact appropriately with supervisors, coworkers, and the public because of "some possible interference from depressed mood." (A.R. 168.)

Furthermore, Dr. Joseph Malancharuvil's testimony at the hearing, as a medical expert, reinforces the conclusion that the ALJ fully and fairly developed the record. (A.R. 296-99.) Dr. Malancharuvil, after reviewing Plaintiff's medical records (including Dr. Abejuela's report), determined that Plaintiff's "[f]unctional limitations [were] essentially coming from . . . mild depression and personality problems." (A.R. 297.) He opined that Plaintiff was limited to "moderately complex tasks, consistent with his intellectual ability . . . in a relatively habituated setting with no demands of academic skills beyond his educational level."[7] (*Id.*) Notably, Dr. Malancharuvil's expert opinion was subject to cross-examination at the hearing, though Plaintiff's counsel did not ask any questions concerning potential limitations

---

[6] Dr. Smith's diagnosis was made prior to Dr. Abejuela's examination. (A.R. 163, 219.) Dr. Abejuela reviewed Dr. Smith's report. (A.R. 220.)

[7] The ALJ gave Plaintiff a more generous mental residual functional capacity than that opined by Dr. Malancharuvil, by limiting Plaintiff to "simple repetitive tasks in a habituated setting with no demands of academic skills at the light range[.]" (A.R. 12; emphasis added.)

arising from Plaintiff's alleged personality disorder.[8] (A.R. 298.) Finally, in view of the fact that Dr. Malancharuvil is a psychologist (A.R. 72-73), to the extent that Plaintiff contends that Dr. Abejuela's "rule out" personality disorder statement required further evaluation by a psychologist, any potential duty to develop the record in that regard was met. Thus, the present record contains no ambiguity or uncertainty necessitating further development in order to support the ALJ's mental residual functional capacity finding.

Moreover, Plaintiff bears the burden of proving that he is disabled. *See* Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999). He cannot meet this burden on the basis of Dr. Abejuela's failure to determine whether Plaintiff has an anti-social personality disorder. Plaintiff has failed to offer any objective evidence of additional limitations on his work capacity arising from this potential disorder. Plaintiff's mere subjective assertion, at the June 11, 2002 hearing, that he still had thoughts of wanting to hurt other people is inadequate to raise doubt on the sufficiency of the aforementioned physicians' assessments.[9] (A.R. 285); *see* Holohan v. Massanari, 246 F.3d 1195, 1201 (9th Cir. 2001)("If the evidence can support either outcome, [the court] may not substitute [its own] judgment for that of the ALJ.")(citing Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999)).

---

[8] Plaintiff's counsel did question Dr. Malancharuvil on whether Plaintiff's ability to read and write could be quantified for residual functional capacity assessment purposes. (A.R. 298.)

[9] Plaintiff was previously imprisoned for attempted murder. (A.R. 285.)

The Court must affirm the Commissioner's decision if it is supported by substantial evidence and if the Commissioner applied the correct legal standards. Holohan, 246 F.3d at 1201. Accordingly, the Court concludes that the ALJ fully and fairly developed the record in this case.

**B. The ALJ Improperly Accounted For The Presence Of A Visual Impairment.**

"The [residual functional capacity] assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments, including the impact of any related symptoms." Social Security Ruling 96-8p. In assessing residual functional capacity, an ALJ is required to consider all limitations, both severe and non-severe, from which a claimant suffers. 20 C.F.R. § 404.1545(e). An impairment or a combination of impairments is not severe if it does not significantly limit a claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 416.921; *see also* Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005)("An impairment is not severe if it is merely 'a slight abnormality (or combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities.'")(citing Social Security Ruling 96-3p). "Basic work activities" include physical functions such as walking, standing, sitting, lifting, pushing, reaching, carrying or handling; capacities for seeing, hearing and speaking; understanding, carrying out and remembering simple instructions; use of judgment; responding

appropriately to supervision, coworkers and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. § 416.921 (emphasis added).

On January 19, 2002, Dr. Brian Huh, a consultative examiner, administered an internal medicine evaluation. (A.R. 169-72.) Dr. Huh noted the results of a Snellen's test, which revealed that Plaintiff's vision without corrective lenses was 20/100 for each eye. (A.R. 170.) Additionally, an examination with pin hole correction returned the same results.[10] (*Id.*) However, no test was conducted with corrective lenses. (*Id.*) Dr. Huh subsequently opined that Plaintiff had "no relevant visual . . . limitations." (A.R. 172.)

Thereafter, on February 1, 2002, a Residual Functional Capacity Assessment form was completed by Dr. Leonard Naiman, a state agency physician. (A.R. 173-82.) Dr. Naiman, after reviewing Dr. Huh's report, opined that Plaintiff had limitations to his far acuity but had no limitations to his near acuity, depth perception, accommodation, color vision, or field of vision. (A.R. 176.) Furthermore, Dr. Naiman noted that Plaintiff's far acuity would be expected to improve with corrective lenses but that Plaintiff still could have difficulty with his sight. (A.R. 181.) Dr. Naiman concluded that Plaintiff should be able to read, write, and see usual objects in the workplace. (*Id.*)

---

[10] Dr. Huh also noted that the funduscopic examination showed no papilledema or hemorrhage. (A.R. 170.) He recorded that Plaintiff's pupils were equal, round, and reactive to light and accommodation. (*Id.*) Furthermore, Dr. Huh observed that Plaintiff's extraocular movements were intact and his sclerae were anicteric. (*Id.*)

A second consultative examination was administered on September 26, 2002, by Dr. Lilian Chang. (A.R. 204-210.) During this examination, a visual acuity test revealed that Plaintiff's vision without glasses was 20/200 when testing both eyes together and each eye separately.[11] (A.R. 210.) However, with pin hole correction, Plaintiff's vision was 20/100 for each eye. (*Id.*) No examination was conducted with corrective lenses, although the physician noted that Plaintiff wears broken prescription glasses.[12] (*Id.*) Dr. Chang concluded that Plaintiff had no visual limitations. (A.R. 207.)

Then, on October 11, 2002, Dr. F. Kalmar completed a Residual Functional Assessment form. (A.R. 211-18.) Dr. Kalmar, after reviewing Dr. Chang's report, opined that Plaintiff had no visual limitations. (A.R. 214.)

Plaintiff contends that the ALJ improperly accounted for Plaintiff's visual impairment. (JS at 9.) Furthermore, he argues that the ALJ erred in failing to develop the record, by not ordering a complete examination of Plaintiff's vision. (*Id.*)

Plaintiff alleged, in his Disability Report and at the hearing, that his vision problem was one of his many ailments. (A.R. 102, 306.)

---

[11] Dr. Chang observed that Plaintiff's pupils were equal and reactive to light and accommodation and his extraocular movements were intact with no conjunctival erythema or discharge. (A.R. 205.) In addition, the funduscopic examination showed no evidence of exudates, hemorrhages, or microaneurysms. (*Id.*)

[12] The visual acuity test was administered by another staff member. (A.R. 210.)

Moreover, he testified that comic books were "hard to read . . . because the letters . . . [were] kind of small." (A.R. 309.) Although the ALJ, in his decision, did not make any reference to Plaintiff's visual impairment, he implicitly found that Plaintiff had no visual impairment, as his decision paralleled the opinions of the examining doctors, Drs. Huh and Chang, and one of the state agency physicians, Dr. Kalmar.[13] (A.R. 12, 15, 172, 207, 214.)

The ALJ's finding, however, was not based on substantial evidence, because the record is unclear as to what impact, if any, Plaintiff's vision deficiency would have on his ability to work. Specifically, Drs. Huh and Chang found that Plaintiff's visual acuity was deficient (*i.e.*, at best 20/100 for each eye without glasses), yet they found no visual limitations. Neither examiner conducted a test with corrective lenses to determine whether Plaintiff's visual acuity was correctable.[14]

Furthermore, the ALJ ignored the opinion of Dr. Naiman, who opined that Plaintiff was limited in his far acuity. (A.R. 176.) As explained in 20 C.F.R. § 404.1527(f)(2)(ii), "[u]nless the treating source's opinion is given controlling weight, the [ALJ] must explain in the decision the weight given to the opinions of a State agency medical . . . consultant[.]" Since no treating physician opined as to Plaintiff's

---

[13] As noted above, the ALJ determined that Plaintiff had "severe" impairments, taken singularly or in combination, of hepatitis C, a depressive disorder, and a personality disorder. (A.R. 12.)

[14] According to Listing No. 2.02 of Appendix 1 to Subpart P of Part 404, an impairment of central visual acuity where the better eye, after best correction, is 20/200 or less is commensurate with statutory blindness.

visual limitations, the ALJ was required to explain his reasons for rejecting Dr. Naiman's assessment.

Although the ALJ discussed Plaintiff's visual limitations and Dr. Naiman's assessment in his prior June 25, 2003 decision, the findings from that decision were not explicitly adopted in his current decision. (A.R. 12.) Rather, the ALJ, in his current decision, stated that "all evidence adduced at the prior hearing, legal arguments advanced, testimony received and documents admitted into evidence are incorporated into the instant decision by way of reference herein." (*Id.*) As no explicit reference is made to the ALJ's prior analysis of Dr. Naiman's opinion, a clear conclusion cannot be drawn that adequate weight has been given to Dr. Naiman's determination.

Even assuming arguendo that the ALJ did properly adopt the findings from his prior decision, the ALJ still erred by selectively ignoring significant findings in Dr. Naiman's assessment. *See* Reddick v. Chater, 157 F.3d 715, 722-23 (9th Cir. 1998)(reversible error for an ALJ to paraphrase misleadingly the evidence in the record). In his prior decision, the ALJ noted that "[w]hile the evaluation did reveal some loss of vision, it was clearly not listing level and would be expected to improve with corrective lenses." (A.R. 25.) Although, the ALJ's statement reflects a portion of Dr. Naiman's opinion, the ALJ failed to assess the remainder of Dr. Naiman's assessment that Plaintiff "could have difficulty with far distant vision."[15] (A.R. 181.)

---

[15] The ALJ did not explicitly adopt a portion of Dr. Naiman's assessment but implicitly did so by similarly stating that Plaintiff's vision would be expected to improvement with corrective lenses. (A.R.

Although Plaintiff's visual impairment may not preclude work, it may impact his residual functional capacity. Here, the ALJ has adopted the opinions of physicians whose opinions have failed to assess whether, and to what extent, Plaintiff's visual deficiency can be corrected. *See* Mayes, 276 F.3d at 459-60 ("An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence."). Therefore, the ALJ should clarify and develop the record regarding Plaintiff's residual functional capacity by ordering an examination in which all aspects of Plaintiff's visual limitations (*i.e.*, near acuity, far acuity, depth perception, accommodation, color vision, and field of vision) and the correctability of such limitations, if any, are assessed. 20 C.F.R. §§ 404.1519a(b), 416.919a(b) (listing situations requiring a consultative examination, such as a conflict, inconsistency, ambiguity, or insufficiency in the evidence). Then, the ALJ should elicit an opinion from a medical expert, an examining physician, or a treating physician based on all the relevant medical evidence. 20 C.F.R. §§ 404.1545(a), 416.945(a) (residual functional capacity is an assessment based upon all of the relevant evidence).

After determining Plaintiff's residual functional capacity, the ALJ should, if necessary, call a vocational expert to determine the availability of work, given the deficiencies in Plaintiff's vision. *See* Andrews, 53 F.3d at 1044 (in order for the vocational expert's testimony to constitute substantial evidence, an ALJ must pose hypothetical questions that "consider all of the claimant's limitations")(citing

---

25, 181.) No other physician made such a prognosis.

Magallanes v. Bowen, 881 F.2d 747, 756 (9th Cir. 1989)).

**C. Remand Is Required.**

The decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion. Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th Cir. 2000). Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. *Id.* at 1179 ("the decision of whether to remand for further proceedings turns upon the likely utility of such proceedings"). However, where there are outstanding issues that must be resolved before a determination of disability can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated, remand is appropriate. *Id.*

Here, remand is the appropriate remedy to allow the ALJ the opportunity to remedy the above-mentioned deficiencies and errors. *See* McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989)(remand appropriate to remedy defects in the record).

**CONCLUSION**

Accordingly, for the reasons stated above, IT IS ORDERED that the decision of the Commissioner is REVERSED, and this case is REMANDED for further proceedings consistent with this Memorandum Opinion and Order.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for Plaintiff and for Defendant.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: September 28, 2006

/s/
MARGARET A. NAGLE
UNITED STATES MAGISTRATE JUDGE